UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
MEDQUEST, LTD.,

                              Plaintiff,

                                                    Case No. 21 cv 5307

            -v-
                                                    COMPLAINT
CHRISTINA ROSA, CAROLYN FINK and
TRIMERITUS Co

                              Defendants
-------------------------------------------------------------------x

Plaintiff MEDQUEST LTD,("MedQuest") by its attorneys EGAN LAW FIRM for its complaint against defendants Christine Rosa( "Rosa" ), Carolyn Fink ("Fink") and Trimeritus Group LLC ("Trimeritus") alleges as follows:

## NATURE OF ACTION

1       This is an action for misappropriation of trade secrets brought by Plaintiff MedQuest against defendants Rosa and Fink, former employees of MedQuest, and Trimeritus, the corporation formed by defendants while employed by MedQuest, to compete against MedQuest in violation of the Defend Trade Secrets Act, 18 USC 1836(b)(1)and (3) ("DTSA") and related common law causes of action barring the misappropriation of trade secrets.

## JURISDICTION

2       The jurisdiction of this Court is invoked pursuant to 28 USC 1331 with respect to the DTSA cause of action and 28 U.S.C. § 1367(a) for claims arising under the New York common law based on the doctrine of supplemental jurisdiction in that such claims arise from a common nucleus of operative fact and are so intertwined with other matters pending before the Court as to make exercise of supplemental jurisdiction appropriate.

1

VENUE

3      Venue is properly placed in the Southern District of New York under 28 U.S.C. §

1391(b) in that a substantial part of the events giving rise to this claim arose in this district and

records relevant to the practices complained of herein are located in this district.

PARTIES

4      MedQuest ("the Company") is a New York corporation. It is located at 345 Seventh

Ave, Suite 1401, in New York City. It is in the business of providing medical/legal experts, medical

record retrieval/ organization offshore, Life Care plans, Medical Cost Reports, Economist and

Vocational reports along with various funding products, and other ancillary services for attorneys

and insurance companies worldwide. The Company has been in business for 38 years and

operates in interstate commerce.

5      Rosa is a resident of the State of New Jersey. Until January of 2021 when she

resigned, she was employed by the Company. Her job was to coordinate, assemble and deliver

the expert services requested by customers of the Company and to provide where necessary

support during the engagement. She worked in this job for approximately 28 years.

6      Fink is a resident of the State of New York. Until January 2021 when she resigned,

she was employed by the Company. Her job was to assist defendant Rosa in coordinating,

assembling and delivering services requested by customers of the Company and providing when

necessary support during the engagement. Defendant Fink had working in this job for 20+ years.

7      Trimeritus is a New York corporation formed by defendants Rosa and Fink in

January 2020, 12 months before they resigned from the Company. Upon information and belief,

Trimeritus was formed to provide the same medical expert services the Company did to lawyers

in the medical malpractice field, including those to whom they had provided service while employed by the MedQuest.

8       The MedQuest business by which defendants Rosa and Fink were employed was its expert service ("Expert Service").  The purpose of the Expert Service was to provide medical experts to attorneys litigating personal injury and medical malpractice cases.

9       MedQuest had been in the business of providing experts to lawyers in the personal injury and medical malpractice fields for 38 years.  After the first few years, the Expert Service was a steady source of revenue for MedQuest.  In the three years prior to defendants' resignations, revenues for this Service rose from $2.1 million in 2017 to $2.3 million in 2019.

10      MedQuest maintained a roster of approximately 2500 experts gathered with diligent effort and at great expense over a period of years.  The only way an expert can be identified as appropriate for a particular litigation is by understanding comprehensively the medical issue(s) that needs to be addressed and by calling/emailing doctors practicing in the same general area until you find one who is able to address the particular medical question at issue. After 38 years, MedQuest's expert data base contains many experts with whom MedQuest has worked over a number of years.

11      The expert data base contains the experts name, fees charged, his/her specialty, where they attended medical school, where they practice and any hospitals with which they are associated in order to avoid conflicts; the cv, whether they typically testify more frequently for plaintiffs or defendants, assorted idiosyncratic information about the doctor, their practice,  their specialty among other things.  Relevant information about the expert's testimony on each assignment is also recorded in the data base.

3

12      The Company also maintained an extensive roster of 45,000+ malpractice and personal injury lawyer clients and prospective clients.  In addition to the lawyers with whom the Company has worked, the Company client list included lawyers who had contacted the Company and those whom the Company had contacted.  Every lawyer on the list was the result of a contact by the Company following a request for information or a conversation at a trade show or by phone through its sales efforts.

13      Medical malpractice and personal injury lawyers can obtain their experts in a variety of ways.  Thus, the identity of those who are interested in going through a service and/or had used expert services in the past was valuable to MedQuest and gave it a competitive edge over other companies seeking to provide the same services to lawyers in competition with MedQuest.  The economic advantage obtained by MedQuest from having customer and expert data bases only existed if the data bases remained secret and were not made available to those providing a competitive service.

14      Defendants were an essential part of the Expert Service.  Though others attended trade shows and followed up contacts to sell the service, Rosa and Fink were the ones who talked to the customer, helped them select an expert and responded to any subsequent difficulties encountered during the case.  They were the face of MedQuest's Expert Service.  Repeat customers called/emailed them directly.

15      The Company took extensive steps to preserve the confidentiality of the customer and expert lists including; reserving to defendants Rosa and Fink special password access to the lists, limiting administrative access to the lists to defendant Rosa, making it difficult for other employees not involved with the Expert Service to print, download, or e-mail the list; distributing

a policy manual containing a section on "Confidential and Proprietary" information which explicitly identified the customer and expert lists as subject to the policy; emphasizing at staff meetings the confidential nature of the customer list.

16      In the fall of 2019, just before New York City shut down because of the pandemic, MedQuest hired a security consultant to advise the Company how best to preserve the confidentiality of its customer and expert lists, among other things. MedQuest was in the process of implementing the advisor's recommendations when the office closed for the pandemic.

17      Over 38 years, plaintiff has made a significant investment in its Expert Service. This investment included attendance at trade shows several times a year to sell the service, following up calls and emails requesting information about the service, advertising the service on its website and elsewhere, hiring defendants and making it possible for them to develop relationships with clients and experts that would encourage them to use MedQuest's Expert Service again, screening and investigating the credentials of experts, paying for experts to review the merits of prospective medical malpractice cases for clients .

18      These lists constitute confidential proprietary information of MedQuest and are trade secrets belonging exclusively to the Company.

19      Beginning in July 2020, after defendants Rosa and Fink formed defendant Trimeritus, the number of new cases booked monthly by MedQuest dropped precipitously. The number of new cases in December 2020, was the lowest number of cases booked in a month by the Expert Service in many years. Revenues for 2021 are projected to be significantly lower than those for 2020.

20      Upon information and belief, Rosa and Fink while employed by MedQuest contacted MedQuest customers and advised them of their plan to leave the Company and to provide the same service from their own company, defendant Trimeritus.

21      Upon information and belief, Fink and Rosa provided services to MedQuest customers in the name of Trimeritus during 2020 while they were still employed by MedQuest.

22      Since Rosa and Fink's resignation from the Company, the Company has been informed by a number of its clients that they were contacted by Trimeritus about providing competing expert services.  Since Trimeritus was formed in January 2020, the business generated by MedQuest's Expert Service has diminished.  The Expert Service has lost clients.  Upon information and belief, these clients have been lost to defendant Trimeritus at the urging of defendants Rosa and Fink.

23      Plaintiff's investment in the Expert Service, including defendants' role in it, is "good will" which is entitled to protection.  Together, the Expert List and Client list are trade secrets belonging to plaintiff which MedQuest policies specifically prohibited defendants from disclosing to or using for the benefit of anyone other than MedQuest.  Defendants Rosa and Fink owed plaintiff a duty to protect MedQuest's good will and trade secrets. The opening and operation of a competing service both before their resignations and after clearly breaches this duty.

24      Moreover, defendants' actions as hereinabove described were taken in bad faith with the willful and deliberate intention of  taking over MedQuest's Expert Service and running it for their benefit. In the dark of the pandemic, while MedQuest's offices were closed, defendants working from home without any supervision were free to access the data base to set

up their own business.  There are many medical experts and lawyers who need their services who are not on MedQuest's expert and client lists.  Upon information and belief, instead of taking the time, energy and money necessary to create an Expert Service, defendants Rosa and Fink misappropriated the clients and experts in MedQuest's lists using the relationships they built at MedQuest.

25      Plaintiff has suffered significant damages through this misappropriation.  It has lost the revenues directed by Rosa and Fink to Trimeritus prior to their resignation.  It has lost revenues associated with clients misappropriated by defendants in active cases and the revenues such clients might have generated in the future; the compensation paid to defendants Rosa (approximately $157,000) and Fink (approximately $114,000) during 2020 and through their departure when defendants were in fact planning and building their own competing service; diminished the value of MedQuest's goodwill causing a sale of the Company to fail which would otherwise not have failed, as well as the costs associated with building the Expert Service back up.

## AS AND FOR A FIRST CAUSE OF ACTION
## FOR BREACH OF FIDUCIARY DUTY

26      The foregoing paragraphs are incorporated by reference as though fully set forth herein

27      MedQuest's Expert and Client Lists were trade secrets containing information about the lawyer clients and experts that was not generally available to the public and was assembled by plaintiff MedQuest over a 38-year period with great expense and effort.

28      As the persons responsible for the day to day management of the Expert Service defendants Rosa and Fink played a significant role in the Service by developing relationships with

7

customers and experts that encouraged them to channel their relationships with each other through plaintiff.

29      Defendant Rosa and Fink's role in the development and maintenance of plaintiff's Expert Service, for which plaintiff paid, was essential to building the good will of Plaintiff's Expert Service.  Defendant Rosa and Fink's role in MedQuest's Expert Service rendered them unique employees.  As managers of the Expert Service, defendants owed MedQuest a duty to keep MedQuest's expert and customer lists confidential and to use them only for the benefit of MedQuest.

30      Under such circumstances, defendants Rosa and Fink are barred from seeking to do business with the clients and experts with which they formed relationships while employed by plaintiff MedQuest.

31      Defendants Rosa and Fink are soliciting the business of clients and experts who they came to know and worked with while employed by plaintiff MedQuest.  Upon information and belief, prior to their resignations from MedQuest, defendants Rosa and Fink advised MedQuest's clients and experts of their plan to start a competing Service.

32      A year prior to their resignations, defendants incorporated the competing Service, defendant Trimeritus.  During defendants' last  year of employment, MedQuest's revenues from its Expert Service dropped significantly.   Upon information and belief, some of MedQuest's revenues for Expert Service were diverted to Trimertitus.

33       Such conduct is a breach of fiduciary duty which caused MedQuest significant economic damages in an amount to be proved at trial and which includes, but is not limited to, a loss of customers, a loss of experts, the payment of compensation to defendants during their last

year at MedQuest while they were building their own competing service, lost profits on the sales diverted, the loss of future profits from MedQuest customers, the termination of an anticipated offer to buy MedQuest, a significant diminution in the value of MedQuest's good will among other things.

34      Defendants are liable to Plaintiff for the damages suffered as a consequence of their breach of fiduciary duty.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR UNFAIR COMPETITION

35      The foregoing paragraphs are incorporated by reference as though fully set forth herein.

36      The customer and expert lists of developed by MedQuest over a period of years at great cost and with great effort are trade secrets.  They contain information that is not publicly available concerning MedQuest's client lawyers and experts.

37      The client and expert lists were developed by and for the benefit of MedQuest at its expense.  At all relevant times, the lists were the exclusive property of MedQuest.

38      Defendants misappropriated these lists to conduct their own competing service.

39      Such misappropriation was done in bad faith.  At the time of the misappropriation, defendants Fink and Rosa were employed by MedQuest and were, in effect, the managers of the Expert Service and an integral part of MedQuest's management.  Defendants chose to contact those on MedQuest's lists, even though there are many lawyers who specialize in personal injury and medical malpractice and need medical experts who were not on MedQuest's lists.

40      Such conduct was willful and intended to cause harm to MedQuest and caused MedQuest significant damage in an amount to be proved at trial including, but not limited to, a

loss of customers, a loss of experts, the payment of compensation to defendants during their last year at MedQuest while they were building their own competing service, lost profits on the sales diverted, the loss of future profits from MedQuest customers, the termination of an anticipated offer to buy MedQuest, a significant diminution in the value of MedQuest's good will among other things.

41      Defendants are liable to plaintiff for the damages caused by unfair competition.

### AS AND FOR A THIRD CAUSE OF ACTION FOR
### VIOLATION OF THE DEFEND TRADE SECRETS ACT

42      The foregoing paragraphs are incorporated by reference as though fully set forth herein.

43      MedQuest's Expert Service is and at all relevant times has been a service in interstate commerce.

44      MedQuest's data base including lists of experts and customers and prospective Customers are trade secrets as that term is defined in the DTSA, 18 USC 1836(a) and (c).

45      MedQuest has taken reasonable measures to maintain the secrecy of its customer and expert lists and the lists derive independent economic value from being kept confidential and not available to competitors or the public at large.

46      The data base, including its expert and customer lists, was obtained by defendants Rosa and Fink using improper means by accessing the lists for their personal benefit and the benefit of Trimeritus though they were employed by MedQuest and responsible for the management and performance of its Expert Service.

47      Defendants Rosa and Fink knew that they had a duty to preserve the confidentiality of MedQuest's lists and to use them exclusively for the benefit of MedQuest.

48     The conduct of defendants Rosa and Fink as described above constitutes a

misappropriation as that term is used in the DTSA.

49     Defendants have violated the DTSA for which violation MedQuest is entitled to

damages and exemplary damages in an amount to be proved at trial and which includes, but is

not limited to, a loss of customers, a loss of experts, the payment of compensation to defendants

during their last year at MedQuest while they were building their own competing service, lost

profits on the sales diverted, the loss of future profits from MedQuest customers, the termination

of an anticipated offer to buy MedQuest, a significant diminution in the value of MedQuest's

good will among other things.

WHEREFORE, plaintiff MedQuest requests the Court to:

- Enjoin defendants from any further solicitation of customers or experts who appear in MedQuest's data base.

  - Enter judgment declaring that the acts and practices of Defendants described above are in violation of the DTSA and common law causes of action for breach of fiduciary duty and unfair competition;

  - Order that Defendants make whole Plaintiff for amounts to which it may have been entitled had it not been for Defendants' illegal actions including, but not limited to, a loss of customers, a loss of experts, the payment of compensation to defendants during their last year at MedQuest while they were building their own competing service, lost profits on the sales diverted, the loss of future profits from MedQuest customers, the termination of an anticipated offer to buy MedQuest, a significant diminution in the value of MedQuest's good will among other things.

  - Award compensatory damages for damages to reputation and profession endured by Plaintiff in amounts that are fair, just and reasonable, to be determined at trial;

  - Award Plaintiff punitive and/or exemplary damages in an amount to be determined at trial;

- Award Plaintiff all costs of this action, including reasonable attorneys' fees.

- Grant Plaintiff such other and further relief as the Court deems appropriate and equitable,

EGAN LAW FIRM

By Susan B Egan
805 Third Avenue  10th Floor
New York, NY 10022
212 619 8456
segan@eganlawfirm.com