UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
MEDQUEST, LTD.,

                                    Plaintiff,

                                                          Case No. 21 cv 5307   (PGG)

              -V-
                                                          EGAN  AFFIRMATION

CHRISTINE ROSA, CAROLYN FINK and
TRIMERITUS GROUP LLC

                                    Defendants
--------------------------------------------------------------------x

        I, Susan S Egan, do hereby affirm:

        1.  I am an attorney licensed to practice in the State of New York and the District Court for

the Southern District of New York.  I am the owner of Egan Law Firm, counsel of record for

plaintiff MedQuest Ltd.  I am fully familiar with the facts of this case.

        2.  Attached  is a Proposed Second Amended Complaint which plaintiff urges the Court to

consider in connection with plaintiff's request for leave to file a Second Amended Complaint.


        I affirm that all of foregoing statements are true.  I am aware that if any of the foregoing

statements are willfully false, I am subject to punishment.

                                        _____
                                        Susan S Egan

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
MEDQUEST, LTD.,

                              Plaintiff,

                                                            Case No. 21 cv 5307    (PGG)

                -v-                                               PROPOSED
                                                            2d AMENDED COMPLAINT
CHRISTINE ROSA, CAROLYN FINK and
TRIMERITUS GROUP LLC

                              Defendants
----------------------------------------------------------------x

Plaintiff MEDQUEST LTD,("MedQuest") by its attorneys EGAN LAW FIRM for its second

amended complaint against defendants Christine Rosa( "Rosa" ), Carolyn Fink ("Fink") and

Trimeritus Group LLC ("Trimeritus") alleges as follows:

## NATURE OF ACTION

1       This is an action for misappropriation of trade secrets brought by Plaintiff

MedQuest against defendants Rosa and Fink, former employees of MedQuest, and Trimeritus,

the corporation formed by defendants while employed by MedQuest, to compete against

MedQuest in violation of the Defend Trade Secrets Act, 18 USC 1836(b)(1)and (3) ("DTSA") and

related common law causes of action barring the misappropriation of trade secrets.

## JURISDICTION

2       The jurisdiction of this Court is invoked pursuant to 28 USC 1331 with respect to

the DTSA cause of action and 28 U.S.C. § 1367(a) for claims arising under the New York

common law based on the doctrine of supplemental jurisdiction in that such claims arise from a

1

common nucleus of operative fact and are so intertwined with other matters pending before the Court as to make exercise of supplemental jurisdiction appropriate.

## VENUE

3    Venue is properly placed in the Southern District of New York under 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to this claim arose in this district and records relevant to the practices complained of herein are located in this district.

## PARTIES

4    MedQuest ("the Company") is a New York corporation. It is located at 345 Seventh Ave, Suite 1401, in New York City. It is in the business of providing medical/legal experts, medical record retrieval/ organization offshore, Life Care plans, Medical Cost Reports, Economist and Vocational reports along with various funding products, and other ancillary services for attorneys and insurance companies worldwide. The Company has been in business for 38 years and operates in interstate commerce.

5    Rosa is a resident of the State of New Jersey. Until January of 2021 when she resigned, she was employed by the Company. Her job was to coordinate, assemble and deliver the expert services requested by customers of the Company and to provide where necessary support during the engagement. She worked in this job for approximately 28 years.

6    Fink is a resident of the State of New York. Until January 2021 when she resigned, she was employed by the Company. Her job was to assist defendant Rosa in coordinating, assembling and delivering services requested by customers of the Company and providing when necessary support during the engagement. Defendant Fink had working in this job for 20+ years.

2

7       Trimeritus is a New York corporation formed by defendants Rosa and Fink in January 2020, 12 months before they resigned from the Company.  Upon information and belief, Trimeritus was formed to provide the same medical expert services the Company did to lawyers in the medical malpractice field, including those to whom they had provided service while employed by the MedQuest.

8       The MedQuest business by which defendants Rosa and Fink were employed was its expert service ("Expert Service").  The purpose of the Expert Service was to provide medical experts to attorneys litigating personal injury and medical malpractice cases.

9       MedQuest had been in the business of providing experts to lawyers in the personal injury and medical malpractice fields for 38 years.  After the first few years, the Expert Service was a steady source of revenue for MedQuest.  In the three years prior to defendants' resignations, revenues for this Service rose from $2.1 million in 2017 to $2.3 million in 2019.

10      MedQuest maintained a roster of approximately 2500 experts gathered with diligent effort and at great expense over a period of years.  Defendants worked closely with the experts to become familiar with their work, their expertise, the strengths and weaknesses of their written product and oral performance. After 38 years, MedQuest' s expert data base contained many experts with whom MedQuest had worked over a number of years.  It knew enough about their capabilities to be able to promptly and credibly recommend the "best" expert for a customer's case.  This represented a significant commercial advantage to MedQuest which was able to eliminate or  reduce the trial and error which often accompanied the efforts of attorneys trying to find and manage expert testimony themselves rather than through a service.

11      The expert data base contains the experts name, fees charged, his/her specialty, where they attended medical school, where they practice and any hospitals with which they are associated in order to avoid conflicts; the cv, whether they typically testify more frequently for plaintiffs or defendants, assorted idiosyncratic information about the doctor, their practice, their specialty among other things.   Relevant information about the expert's testimony on each assignment is also recorded in the data base.

12      The Company also maintained an extensive roster of 45,000+ malpractice and personal injury lawyer clients and prospective clients.  In addition to the lawyers with whom the Company has worked, the Company client list included lawyers who had contacted the Company and those whom the Company had contacted.  Every lawyer on the list was the result of a contact by the Company following a request for information or a conversation at a trade show or by phone through its sales efforts.  While many personal injury and malpractice lawyers arrange for experts themselves without the aid of a service, the lawyers on MedQuest's customer list had identified themselves as interested in hiring experts through a service.

13      The identity of lawyers interested in managing their need for experts through a service and/or those who had used expert services in the past is valuable to MedQuest and gives it a competitive edge over other companies seeking to provide the same services to lawyers in competition with MedQuest, including defendant Trimeritus.  The economic advantage obtained by MedQuest from having customer and expert data bases only existed if the data bases were kept confidential and were not made available to those providing a competitive service.

14      These lists constitute confidential proprietary information of MedQuest and are trade secrets belonging exclusively to the Company.

4

15      Defendants were an essential part of the Expert Service.  Though others attended trade shows and followed up contacts to sell the service, Rosa and Fink were the ones who talked to the customer, helped them select an expert and responded to any subsequent difficulties encountered during the case. They were the ones who worked with the experts, became familiar with their strength and weaknesses, who they worked well with and who they didn't.  Defendants were the face of MedQuest's Expert Service.  Customers and experts called/emailed them directly.

16      The Company took extensive steps to preserve the confidentiality of the customer and expert lists. MedQuest included a confidentiality provision in its handbook which prohibited the disclosure of confidential proprietary information including the customer and expert lists.  It provided

> The company continues to strive to maintain the highest level of security regarding the overall business. No employee may, in any way, divulge confidential Company or Client information (i.e., methods of operation or client & expert lists) to any individual not a member of the Company or to any competitor without the express written permission from the Principal of the Company.

Defendants acknowledged receiving and reviewing the handbook including this provision in writing.

17      Defendant Rosa and the MedQuest CEO were the only persons with administrative access to the data base. Administrative access is the highest level of access on the SLX software system which housed the database. It enabled defendants to modify the system and the data, generate reports regarding the data and download data. In order to access the data base, defendants had unique passwords which were kept secret from other employees except for the CEO.  Without administrative access, other MedQuest employees could not print, email or

download the data.  When those in Sales wanted add someone to either list, the changes had to be made by defendants or the CEO.

18      In the fall of 2019, following the departure from MedQuest of its office manager, MedQuest began to make administrative changes. It hired a new chief financial officer. MedQuest hired a security consultant to advise the Company how best to preserve its confidential information including its customer and expert lists. It recommended software which had the ability, *inter alia*, to identify when large downloads of information were being made from MedQuest's network.  It integrated the invoicing of Expert Service business into the Company's general accounting system. It gave consideration to being acquired by another company the principals of which met with defendants to better understand the business of the Expert Service. Defendants expressed displeasure with many of these changes.

19.   From December 2019 to the office closure in March 2020, Rosa brought her personal computer to the office.  Upon information and belief, when she had her personal computer at the office, she downloaded on to it data from the Company's customer and expert lists. Immediately before the pandemic, defendant Rosa sought permission to take her CPU home rather than dial in to the Company network while the Company's office was closed.  MedQuest denied her request.

20      At the time of their resignation, MedQuest's CEO reminded defendants by email and in personal conversations that the customer and expert lists were confidential and were not to be used for the benefit of anyone other than MedQuest.

21      Over 38 years, plaintiff has made a significant investment in its Expert Service.  This investment included attendance at trade shows several times a year to sell the service,  following

up calls and emails requesting information about the service, advertising the service on its website and elsewhere, hiring defendants and making it possible for them to develop relationships with clients and experts that would encourage customers to use MedQuest's Expert Service again, screening and investigating the credentials of experts, paying for experts to review the merits of prospective medical malpractice cases for clients, among other things.

22      In January 2020, while still employed by MedQuest, defendants incorporated Trimertus.  Starting in July 2020, two months after defendants began working at home  the number of new cases booked monthly by MedQuest began trending downward.  The number of new cases in December 2020, was the lowest number of cases booked in a month by the Expert Service in many years.  Revenues for 2021 were 25% below their level in 2019.

23      Upon information and belief, Rosa and Fink while employed by MedQuest contacted MedQuest customers and advised them of their plan to leave the Company and to provide the same service from their own company, defendant Trimeritus.

24      Upon information and belief, Fink and Rosa provided services to MedQuest customers in the name of Trimeritus during 2020 while they were still employed by MedQuest.

25      Defendants left MedQuest on or about January 11, 2021.  Plaintiff learned from a customer in March 2021 that he had contacted by defendants.  In an email from defendants to the MedQuest customer, defendants offered the customer precisely the same service that MedQuest had been providing at the same price.  In that email, defendants referenced "Trimeritus Group's "expansive network of experts .  Upon information and belief, 8 weeks after their departure from MedQuest, the referenced list can only have been MedQuest's misappropriated expert list.

26     Since Rosa and Fink's resignation from the Company, the Company has been informed by a number of its clients that they were contacted by Trimeritus about providing competing expert services and have provided services to some. To encourage MedQuest clients to hire defendants instead of MedQuest, defendants informed them that MedQuest was "being bought out" causing customers to think that MedQuest would no longer be providing its Expert Service.

27     The suggestion that MedQuest would no longer be providing its Expert Service has caused serious injury to MedQuest's current business which was off some 25% during 2021, Trimeritus' first year in business, as well as its prospects going forward. Upon information and belief, this damage is a direct result of the actions of defendants as hereinabove described and the misrepresentations they have made respecting the availability of the Company's Expert Service going forward.

28     Plaintiff's investment in the Expert Service, including defendants' role in it, is "good will" which is entitled to protection.  Together, the Expert List and Client list are trade secrets belonging to plaintiff which MedQuest policies specifically prohibited defendants from disclosing to or using for the benefit of anyone other than MedQuest.  Defendants Rosa and Fink owed plaintiff a duty to protect MedQuest's good will and trade secrets. The opening and operation of a competing service both before their resignations and after clearly breaches this duty.

29     Moreover, defendants' actions as hereinabove described were taken in bad faith with the willful and deliberate intention of  taking over MedQuest's Expert Service and running it for their benefit. In the dark of the pandemic, while MedQuest's offices were closed,

defendants working from home without any supervision were free to access the data base to set up their own business.  Upon information and belief, defendants Rosa and Fink by copying, download or writing, took the information from MedQuest's customer and expert lists during their employment with MedQuest.  They used this information while employed by MedQuest to contact customers and experts on behalf of Trimertus and following their resignations to open Trimeritus in business independently as soon after their departure as possible.

30      Plaintiff has suffered significant damages through this misappropriation.  It has lost the revenues directed by Rosa and Fink to Trimeritus prior to their resignation.  It has lost revenues associated with clients misappropriated by defendants in active cases and the revenues such clients might have generated in the future; the compensation paid to defendants Rosa (approximately $157,000) and Fink (approximately $114,000) during 2020 and through their departure when defendants were in fact planning and building their own competing service; diminished the value of MedQuest's goodwill causing a sale of the Company to fail, as well as the costs associated with building the Expert Service back up.

### AS AND FOR A FIRST CAUSE OF ACTION
### FOR BREACH OF FIDUCIARY DUTY

31      The foregoing paragraphs are incorporated by reference as though fully set forth herein

32      MedQuest's Expert and Client Lists were trade secrets containing information about the lawyer clients and experts that was not generally available to the public and was assembled by plaintiff MedQuest over a 38-year period with great expense and effort.

33      As the persons responsible for the day to day management of the Expert Service defendants Rosa and Fink played a significant role in the Service by developing relationships with customers and experts that encouraged them to channel their relationships with each other through plaintiff.

34      Defendant Rosa and Fink's role in the development and maintenance of plaintiff's Expert Service, for which plaintiff paid, was essential to building the good will of Plaintiff's Expert Service.  Defendant Rosa and Fink's role in MedQuest's Expert Service rendered them unique employees.  As managers of the Expert Service, defendants owed MedQuest a duty to keep MedQuest's expert and customer lists confidential and to use them only for the benefit of MedQuest.

35      Under such circumstances, defendants Rosa and Fink are barred from seeking to do business with the clients and experts with which they formed relationships while employed by plaintiff MedQuest.

36      Defendants Rosa and Fink are soliciting the business of clients and experts who they came to know and worked with while employed by plaintiff MedQuest.  Upon information and belief, prior to their resignations from MedQuest, defendants Rosa and Fink advised MedQuest's clients and experts of their plan to start a competing Service.

37      A year prior to their resignations, defendants incorporated the competing Service, defendant Trimeritus.  Upon information and belief, defendants provided services to MedQuest's customers through Trimeritus while they were still employed by MedQuest.  Upon information and belief, defendants took other actions while they were employed by MedQuest to facilitate the opening of Trimeritus following their departure from MedQuest.  During defendants' last

year of employment, MedQuest's revenues from its Expert Service dropped significantly.  Upon information and belief, some of MedQuest's revenues for Expert Service were diverted to Trimeritus.

38      Such conduct is a breach of fiduciary duty which caused MedQuest significant economic damages in an amount to be proved at trial and which includes, but is not limited to, a loss of customers, a loss of experts, the payment of compensation to defendants during their last year at MedQuest while they were building their own competing service, lost profits on the sales diverted to Trimeritus, the loss of future profits from MedQuest customers, the termination of an anticipated offer to buy MedQuest, a significant diminution in the value of MedQuest's good will among other things.

39      Defendants are liable to Plaintiff for the damages suffered as a consequence of their breach of fiduciary duty.

### AS AND FOR A SECOND CAUSE OF ACTION
### FOR UNFAIR COMPETITION

40      The foregoing paragraphs are incorporated by reference as though fully set forth herein.

41      The customer and expert lists developed by MedQuest over a period of years at great cost and with great effort are trade secrets.  They contain information concerning MedQuest's client lawyers and experts which is not publicly available and which gives MedQuest a competitive advantage over others seeking to provide a competitive service for identifying and managing expert testimony to medical malpractice and personal injury lawyers.

42      The client and expert lists were developed by and for the benefit of MedQuest at its expense.  At all relevant times, the lists were the exclusive property of MedQuest.

11

43      Defendants copied and/or downloaded MedQuest's lists to conduct their own competing service while they were working for MedQuest from home.

44      Such misappropriation was done in bad faith. At the time of the misappropriation, defendants Fink and Rosa were employed by MedQuest and were, in effect, the managers of the Expert Service and an integral part of MedQuest's management. Although there are many personal injury and medical malpractice lawyers who do not use a service to identify and work with their experts, defendants chose to contact those on MedQuest's lists.

45      Such conduct was willful and intended to cause harm to MedQuest and caused MedQuest significant damage in an amount to be proved at trial including, but not limited to, a loss of customers, a loss of experts, the payment of compensation to defendants during their last year at MedQuest while they were building their own competing service, lost profits on the sales diverted to Trimeritus, the loss of future profits from MedQuest customers, the termination of an anticipated offer to buy MedQuest, a significant diminution in the value of MedQuest's good will among other things.

46      Defendants are liable to plaintiff for the damages caused by unfair competition.

AS AND FOR A THIRD CAUSE OF ACTION FOR
VIOLATION OF THE DEFEND TRADE SECRETS ACT

47      The foregoing paragraphs are incorporated by reference as though fully set forth herein.

48      MedQuest's Expert Service is and at all relevant times has been a service in interstate commerce.

49      MedQuest's data base including lists of experts and customers and prospective customers are trade secrets as that term is defined in the DTSA, 18 USC 1836(a) and (c).

12

50      MedQuest has taken reasonable measures to maintain the secrecy of its customer and expert lists and the lists derive independent economic value from being kept confidential and not available to competitors or the public at large.

51      The data base, including its expert and customer lists, was obtained by defendants Rosa and Fink using improper means by accessing the lists for their personal benefit and the benefit of Trimeritus though they were employed by MedQuest and responsible for the management and performance of its Expert Service.

52      Defendants Rosa and Fink knew that they had a duty to preserve the confidentiality of MedQuest's lists and to use them exclusively for the benefit of MedQuest.

53      The conduct of defendants Rosa and Fink as described above constitutes a misappropriation as that term is used in the DTSA.

54      Defendants have violated the DTSA for which violation MedQuest is entitled to damages and exemplary damages in an amount to be proved at trial and which includes, but is not limited to, a loss of customers, a loss of experts, the payment of compensation to defendants during their last year at MedQuest while they were building their own competing service, lost profits on the sales diverted, the loss of future profits from MedQuest customers diverted to Trimeritus, the termination of an anticipated offer to buy MedQuest, a significant diminution in the value of MedQuest's good will among other things.

WHEREFORE, plaintiff MedQuest requests the Court to:

Enjoin defendants from any further solicitation of customers or experts who appear in MedQuest's data base.

Enter judgment declaring that the acts and practices of Defendants described above are in violation of the DTSA and common law

13

causes of action for breach of fiduciary duty and unfair
competition;

Order that Defendants make whole Plaintiff for amounts to which it
may have been entitled had it not been for Defendants' illegal
actions including, but not limited to, a loss of customers, a loss of
experts, the payment of compensation to defendants during their
last year at MedQuest while they were building their own
competing service, lost profits on the sales diverted to Trimeritus,
the loss of future profits from MedQuest customers, the
termination of an anticipated offer to buy MedQuest, a significant
diminution in the value of MedQuest's good will among other
things.

Award compensatory damages for damages to reputation and
profession endured by Plaintiff in amounts that are fair, just
and reasonable, to be determined at trial;

Award Plaintiff punitive and/or exemplary damages in an amount
to be determined at trial;

Award Plaintiff all costs of this action, including reasonable
attorneys' fees.

Grant Plaintiff such other and further relief as the Court deems
appropriate and equitable,

EGAN LAW FIRM

_____

By Susan S Egan
515 Madison Ave, Suite 9015
New York, NY 10022
212 619 8456
segan@eganlawfirm.com