UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MEDQUEST LTD.,

           Plaintiff,

           v.

CHRISTINE ROSA, CAROLYN FINK, and
TRIMERITUS GROUP LLC,

           Defendants.

**ORDER**

21 Civ. 5307 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        In this action, Plaintiff MedQuest Ltd. alleges that two of its former employees, Defendants Christine Rosa and Carolyn Fink, misappropriated its expert database and client list to start their own competing business, Defendant Trimeritus Group. The Amended Complaint alleges violations of the Defend Trade Secrets Act (the "DTSA"), 18 U.S.C. § 1832 et seq., breach of fiduciary duty, and unfair competition. (Am. Cmplt. (Dkt. No. 12)) Defendants have moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 39)

        For the reasons stated below, Defendants' motion will be granted.

## BACKGROUND

**I.      FACTS**

        Plaintiff MedQuest is a New York corporation in the business of, inter alia, providing medical and legal experts to attorneys and insurance companies worldwide. (Am. Cmplt. (Dkt. No. 12) ¶ 4) Defendants Rosa and Fink worked for MedQuest for more than twenty years, coordinating medical expert services for personal injury and medical malpractice lawyers. (Id. ¶¶ 5-6, 8) The expert witness business overseen by Rosa and Fink accounted for

$2.1 million of MedQuest's revenues in 2017, and $2.3 million in 2019. (Id. ¶ 9) As part of its business, MedQuest built and maintained an expert database containing information regarding approximately 2,500 experts. (Id. ¶¶ 10-11) MedQuest also maintained a list of more than 45,000 medical malpractice and personal injury lawyers (the "lawyer list"), which includes both existing and prospective clients. (Id. ¶ 12)

The Amended Complaint pleads that MedQuest "took extensive steps to preserve the confidentiality of the [expert database and the lawyer list]," and to limit employee access to these resources. (Id. ¶ 15) Plaintiff alleges that only Rosa and Fink had "special password access" to the expert database and the lawyer list, and that only Defendant Rosa had "administrative access." The Amended Complaint does not explain what "special password access" and "administrative access" means, however. (Id.) Plaintiff also asserts that it "[made] it difficult for other employees not involved with the Expert Service to print, download, or e-mail the list" – but it does not explain how it "made it difficult" for employees to take these steps, nor is it clear whether "Expert Service" refers to expert database, the lawyer list, or both. (Id.) Plaintiff also pleads that it distributed a policy manual to its employees that includes a section concerning "Confidential and Proprietary" information. According to Plaintiff, the policy manual provides that the expert database and the lawyer list are "subject to that policy," but Plaintiff does not disclose what the policy regarding "Confidential and Proprietary" information is. Plaintiff also pleads that it was emphasized at staff meetings that the lawyer list should be maintained as confidential. (Id.)

Rosa and Fink resigned from MedQuest in January 2021. (Id. ¶¶ 5-6) A year before their resignation, Rosa and Fink formed Trimeritus Group, which offers medical expert services to medical malpractice lawyers. (Id. ¶ 7)

II.     **PROCEDURAL HISTORY**

The Complaint was filed on June 29, 2021 (Dkt. No. 7), and the Amended Complaint was filed on July 24, 2021. (Dkt. No. 12) As noted above, the Amended Complaint alleges violations of the Defend Trade Secrets Act, breach of fiduciary duty, and unfair competition. (Am. Cmplt. (Dkt. No. 12)) On August 17, 2021, Defendants submitted a pre-motion letter seeking leave to move to dismiss. (Dkt. No. 17)

On November 23, 2021, this Court conducted a pre-motion conference. At that conference, this Court expressed "concern about whether the [Amended] [C]omplaint [would] be able to withstand a motion to dismiss," and provided a detailed explanation of the Amended Complaint's deficiencies. (Nov. 23, 2021 Tr. (Dkt. No. 33) at 2)

This Court observed that, "unlike nearly all trade secrets cases [the Court could] recall, there is no confidentiality agreement between [P]laintiff and the individual defendants, nor was there any non[-]compete agreement." (Id. at 3)

This Court also "note[d] that there is nothing secret about either expert witnesses or personal injury and malpractice lawyers," both of whom "widely advertise their services," and that in any event, "given that the individual defendants have worked in this field for more than 20 years, they undoubtedly have extensive knowledge stored in their brains as to both expert witnesses and personal injury lawyers." (Id. at 3-4)

This Court also stated that "the factual allegations supporting [Plaintiff's claims that it maintained the expert database and lawyer list as confidential are] vague," given that the Amended Complaint does not define "'special password access,'" does not "explain what [Plaintiff] did to make it difficult . . . for employees other than [D]efendants Rosa and Fink to print, download, or email [the expert database and lawyer list]," and does not specify "what [Plaintiff's] policy says about [confidential and proprietary information]," or "what was

3

allegedly said at staff meetings about the requirement to keep these materials confidential." (Id. at 4 (quoting Am. Cmplt. (Dkt. No. 12) ¶ 15))

Finally, this Court noted that (1) "there are no allegations that the [D]efendants took either the expert witness database or the [lawyer list] with them when they left MedQuest"; (2) it was "no more than speculation to attribute [MedQuest's alleged] drop in revenue [following the individual defendants' departure from MedQuest] to the defendants' competing business"; and (3) it was not clear "what legal limitation exists that would prevent [the individual defendants] from . . . contact[ing] lawyers that they may have serviced in the past." (Id. at 5)

After describing these concerns, the Court granted Plaintiff leave to amend, setting a deadline of December 3, 2021, for any second amended complaint. (Id. at 5, 8)

Plaintiff elected not to file a second amended complaint, and on December 9, 2021, this Court entered the parties' proposed briefing schedule for Defendants' motion to dismiss. (Dkt. No. 36)

## DISCUSSION

### I.  RULE 12(b)(6) STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007), and must "draw all reasonable inferences in favor of the plaintiff." Kassner, 496 F.3d at 237.

However, allegations that "are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A pleading is conclusory "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678, offers "'a

4

formulaic recitation of the elements of a cause of action,'" id., and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007). While legal conclusions "can provide the complaint's framework, they must be supported by factual allegations." Iqbal. 556 U.S. at 679.

## II.     DEFEND TRADE SECRETS ACT CLAIM

### A.     Applicable Law

"To plead misappropriation of a trade secret under the DTSA, 18 U.S.C. § 1832 et seq., a plaintiff must show 'an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty.'" 24 Seven, LLC v. Martinez, No. 19-CV-7320 (VSB), 2021 WL 276654, at *4-5 (S.D.N.Y. Jan. 26, 2021) (quoting In re Document Techs. Litig., 275 F. Supp. 3d 454, 462 (S.D.N.Y. 2017) (in turn quoting 18 U.S.C. § 1839(3) (A)-(B)). "Similarly, under New York law, [to plead a claim for misappropriation of a trade secret] a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." Id. (quotation omitted).

A "trade secret" is "'any formula, pattern, device, or compilation of information which is used in one's business, and which gives the owner an opportunity to obtain an advantage over competitors who do not know or use it.'" Pauwels v. Deloitte LLP, No. 19-CV-2313 (RA), 2020 WL 818742, at *3 (S.D.N.Y. Feb. 19, 2020) (quoting Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 117 (2d Cir. 2009)). To demonstrate that the allegedly

5

misappropriated information is subject to protection as a trade secret, a plaintiff must allege both that "'the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information'"; and that "'the owner thereof has taken <u>reasonable</u> <u>measures</u> to keep such information secret.'" <u>Mason v. AmTrust Fin. Servs., Inc.</u>, No. 19CV8364 (DLC), 2020 WL 1330688, at *3 (S.D.N.Y. Mar. 23, 2020) (quoting 18 U.S.C. § 1839(3)(A)-(B)) (emphasis in original), <u>aff'd</u>, 848 F. App'x 447 (2d Cir. 2021).

"Under Second Circuit precedent, a customer list 'developed by a business through substantial effort and kept in confidence may be treated as a trade secret . . . provided the information it contains is not otherwise readily ascertainable.'" <u>Free Country Ltd v. Drennen</u>, 235 F. Supp. 3d 559, 566 (S.D.N.Y. 2016) (quoting <u>N. Atl. Instruments, Inc. v. Haber</u>, 188 F.3d 38, 46 (2d Cir. 1999)). "'The question of whether . . . a customer list is a trade secret is generally a question of fact.'" <u>Id.</u> (quoting <u>A.F.A. Tours, Inc. v. Whitchurch</u>, 937 F.2d 82, 89 (2d Cir. 1991)).

  B. <u>Analysis</u>

    1. <b><u>Whether the Amended Complaint Adequately Pleads that the Expert Database and Lawyer List Are Trade Secrets</u></b>

As discussed above, the DTSA applies only to information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means." 18 U.S.C. § 1839(3)(B). Personal injury and medical malpractice lawyers are Plaintiff's clients and potential clients. (Am. Cmplt. (Dkt. No. 12) ¶ 9) The identity, contact information, and areas of specialization of personal injury and medical malpractice attorneys is readily obtainable from attorney directories and over the

internet, where most lawyers advertise. While it is possible that Plaintiff's lawyer list might contain non-public information concerning lawyers to whom Plaintiff has provided its services, the Amended Complaint does not plead such facts. Indeed, the Amended Complaint describes the lawyer list as merely a "roster." (Id. ¶ 12)

Similarly, as described in the Amended Complaint, Plaintiff's expert database contains only public information – each expert's "name, fees charged, . . . specialty, where they attended medical school, where they practice and any hospitals with which they are associated . . . , [their] CV, whether they typically testify more frequently for plaintiffs or defendants, . . . [and] information about the expert's testimony on each assignment." (Id. ¶ 11)[1] Like personal injury and medical malpractice attorneys, expert witnesses typically advertise their services. And to the extent that an expert witness has testified in court, his or her testimony, background, and rates are matters of public record.

The Amended Complaint alleges, however, that the lawyer list has independent economic value, because "[m]edical malpractice and personal injury lawyers can obtain their experts in a variety of ways," so "the identit[ies] of those who are interested in going through a service and/or had used expert services in the past are valuable to MedQuest and gave it a competitive edge." (Am. Cmplt. (Dkt. No. 12) ¶ 13) According to the Amended Complaint, however, Plaintiff obtained these insights about medical malpractice and personal injury lawyers by (1) having "conversation[s] at [] trade show[s]"; and (2) calling the lawyers. (Id. ¶¶ 12 17) Customer information that can be obtained via these methods is readily ascertainable and thus

---

[1] Although the Amended Complaint pleads that the expert database contains "assorted idiosyncratic information about the doctor, their practice, [and] their specialty, among other things," Plaintiff provides no factual details concerning the alleged "idiosyncratic information." (Am. Cmplt. (Dkt. No. 12) ¶ 11)

7

not subject to protection as a trade secret.  See Am. Inst. of Chem. Engineers v. Reber-Friel Co., 682 F.2d 382, 387-88 (2d Cir. 1982) (concluding that customer list was not a trade secret where customers were listed as exhibitors at a trade show); Art & Cook, Inc. v. Haber, 416 F. Supp. 3d 191, 196 (E.D.N.Y. 2017) (denying trade secret protection where "the contacts on Plaintiff's customer lists are generally known in the industry and may be obtained by hiring representatives, attending trade shows, and meeting buyers from various companies"; "the [fact that the] compilation of these lists may be an arduous task, involving tens if not hundreds of hours of research, is not alone sufficient to confer protection under the DTSA") (quotation omitted).  And while Plaintiff alleges that some of the lawyers on the lawyer list had contacted MedQuest – a non-public fact – the Amended Complaint provides no factual detail about this group, including how many of the "45,000+ malpractice and personal injury lawyer[s]" it includes.  (Am. Cmplt. (Dkt. No. 12) ¶ 12)  See 24 Seven, 2021 WL 276654, at *6-7 (holding that client list was not a trade secret where the names of most clients were publicly available through, among other sources, "industry events," and plaintiff had not identified "specific client names that are allegedly not public").

As noted above, the Amended Complaint describes the lawyer list as containing the names of both "clients and prospective clients."  (Am. Cmplt. (Dkt. No. 12) ¶ 12)  In contrast to a customer list, which may be entitled to trade secret protection as private company data, a list of prospects that can be publicly ascertained is not entitled to protection as a trade secret.  See Iron Mountain Info. Mgmt., Inc. v. Taddeo, 455 F. Supp. 2d 124, 139 (E.D.N.Y. 2006) ("Here . . . any company with a computer and a need to back up information is a potential customer of [d]ata [p]roducts.  The product is not one . . . where a company's availability as a potential patron cannot be readily ascertained.") (citing and discussing Webcraft Techs., Inc. v. McCaw,

674 F. Supp. 1039, 1044-45 (S.D.N.Y. 1987) ("The list of prospects is put together from easily available sources. . . . The list of [] customers is a completely different matter.")) (further citation omitted); DataType Int'l, Inc. v. Puzia, 797 F. Supp. 274, 284-85 (S.D.N.Y. 1992) (declining to apply trade secret protection to a list of "[p]roduct divisions and account groups with whom [plaintiff] ha[d] not done business," because they "must be regarded as prospective customers") (emphasis in original); Cf. Velo-Bind, Inc. v. Scheck, 485 F. Supp. 102, 107-08 (S.D.N.Y. 1979) (holding that list of lawyers to whom plaintiff had sold its products was a trade secret); Locke v. Tom James Co., No. 11 CIV. 2961 GBD, 2013 WL 1340841, at *8 (S.D.N.Y. Mar. 25, 2013) (same).

In sum, the Amended Complaint does not plead facts adequate to demonstrate that the expert database and the lawyer list are trade secrets.

### 2. Whether the Amended Complaint Adequately Pleads that Plaintiff Took Reasonable Measures to Protect the Confidentiality of the Expert Database and Lawyer List

Even if this Court were to conclude that the Amended Complaint adequately pleads facts demonstrating that the lawyer list and the expert database are trade secrets, Plaintiff has not pled facts demonstrating that it took "reasonable measures" to maintain their confidentiality. Plaintiff has not alleged, for example, that Defendants Rosa and Fink signed a non-disclosure agreement or a non-compete/non-solicitation agreement. Plaintiff's allegations that it "distribut[ed] a policy manual containing a section on 'Confidential and Proprietary' information [that] explicitly identified the customer and expert lists as subject to the policy [and] emphasiz[ed] at staff meetings the confidential nature of the [lawyer] list" (Am. Cmplt. (Dkt. No. 12) ¶ 15) are not sufficient, given that Plaintiff does not allege that Rosa and Fink acknowledged these obligations and agreed to be bound by them. See Mason, 2020 WL 1330688, at *3 (holding that "it was unreasonable" for plaintiff to share a confidential pricing model with

9

defendant without describing defendant's confidentiality obligations "with particularity in [the] [e]mployment [a]greement or a stand-alone licensing agreement" and without having defendant "sign a non-disclosure agreement"; granting motion to dismiss DTSA claim).

The Amended Complaint's other allegations about protecting the confidentiality of the expert database and lawyer list are vague and conclusory. While Plaintiff claims that it "reserv[ed] to [D]efendants Rosa and Fink special password access to the lists, limit[ed] administrative access to the lists to [D]efendant Rosa, [and made] it difficult for other employees not involved with the Expert Service to print, download, or e-mail the list" (Am. Cmplt. (Dkt. No. 12) ¶ 15), these allegations are not sufficient to plausibly allege that Plaintiff took reasonable measures to protect the confidentiality of the expert database and the lawyer list. See Rodney v. United Masters, No. 21 CV 5872 (DG)(LB), 2023 WL 2184865, at *5 (E.D.N.Y. Feb. 10, 2023) (recommending granting motion to dismiss DTSA claim; stating that "merely informing employees that certain information is a trade secret is 'generally not sufficient' to constitute reasonable measures" and that complaint's allegation that plaintiff used "'passwords [and] security' [and] limited disclosure of the information" did not suffice when "plaintiff [did] not explain how these measures operated to protect the alleged trade secrets at issue") (quoting Altman Stage Lighting, Inc. v. Smith, No. 20-CV-2575, 2022 WL 374590, at *5 (S.D.N.Y. Feb. 8, 2022)); Turret Labs USA, Inc. v. CargoSprint, LLC, No. 19CV6793EKRML, 2021 WL 535217, at *6 (E.D.N.Y. Feb. 12, 2021) (granting motion to dismiss trade secrets claim where complaint "allege[d], nebulously, that certain 'Security Documents' contain[ed] '[p]rocedures for security and access to users'") (second set of brackets in Turret Labs), aff'd, No. 21-952, 2022 WL 701161 (2d Cir. Mar. 9, 2022).

### 3. Whether the Amended Complaint Adequately Pleads Misappropriation of a Trade Secret

As discussed above, in order to "plead misappropriation of a trade secret under the DTSA, . . . a plaintiff must show 'an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty.'"  24 Seven, 2021 WL 276654, at *4 (quotation omitted).

The Amended Complaint does not contain specific factual allegations that Rosa and Fink wrongfully took the exhibit database and the lawyer list, however.  For example, Plaintiff does not allege that Rosa and Fink electronically transmitted the exhibit database and the lawyer list to themselves, or that they downloaded or printed out the exhibit database and lawyer list without authorization.  Instead, the Amended Complaint engages in speculation: "In the dark of the pandemic, while MedQuest's offices were closed, defendants working from home were free to access the [expert database and lawyer list] to set up their own business. . . . Upon information and belief, instead of taking the time, energy, and money necessary to create an [e]xpert [s]ervice, [D]efendants Rosa and Fink misappropriated the clients and experts in MedQuest's lists using the relationships they built at MedQuest."  (Am. Cmplt. (Dkt. No. 12) ¶ 24)

These speculative allegations are not sufficient to allege misappropriation of a trade secret.  See Ad Lightning Inc. v. Clean.io, Inc., No. 19-CV-7367 (JPO), 2020 WL 4570047, at *3 (S.D.N.Y. Aug. 7, 2020) (dismissing trade secret claim where plaintiff "alleges no facts to suggest that the employees actually acquired the information through improper means") (citing Frydman v. Verschleiser, 172 F. Supp. 3d 653, 674-75 (S.D.N.Y.

11

2016) (dismissing claim that a defendant "conspired to steal the Stolen Trade Secrets" and "effected the scheme through [another individual]" as conclusory); see also Mohamed v. F.B.I., No. 14 CIV. 7615 CM, 2015 WL 6437369, at *5 (S.D.N.Y. Oct. 21, 2015) ("Here, Count Four does no more than state the legal conclusion that [defendant] misappropriated, embezzled, and converted funds that should have been paid to [plaintiff].")  "A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." Citizens United v. Schneiderman, 882 F.3d 374, 384 (2d Cir. 2018).

The Amended Complaint likewise does not adequately allege improper "use of a trade secret."  Plaintiff does not directly allege that Rosa and Fink used the lawyer list or the expert database list in their new business.  Instead, the Amended Complaint asks the Court to infer that they did so, because (1) "Defendants have referred clients to experts on MedQuest's list," and (2) "[s]ince Trimeritus was formed in January 2020, the business generated by MedQuest's Expert Service has diminished."  (Am. Cmplt. (Dkt. No. 12) ¶ 22)

Neither of these allegations is sufficient to plausibly allege that Rosa and Fink have improperly used the expert database or the lawyer list.  As to the first allegation, given that Plaintiff's lawyers list consists of "45,000+" personal injury and medical malpractice lawyers, and that the expert database lists "approximately 2,500 experts" (id. ¶¶ 10, 12), it is not surprising or nefarious that Rosa and Fink might have contact with a lawyer on the lawyer list or an expert witness found in the expert database.  Given the expansive nature of Plaintiff's lists, and the fact that Rosa and Fink are engaged in a competing business, some common contacts would be expected.  But this is not sufficient to plausibly allege improper use.

And given that Rosa and Fink worked for more than twenty years at MedQuest before launching their own business (Am. Cmplt. (Dkt. No. 12) ¶¶ 5-6), they may well have

"casual memor[ies]," Leo Silfen, Inc. v. Cream, 29 N.Y.2d 387, 391 (1972), of the lawyers and expert witnesses that they worked with at MedQuest, which could account for any overlapping contacts.

As to the second allegation – that MedQuest's business has declined since January 2020, when Defendants formed their business – this conclusory allegation is not sufficient to demonstrate that Defendants have unlawfully used Plaintiff's alleged trade secrets.  For example, the court closures necessitated by the COVID-19 pandemic could have led to a decline in MedQuest's business.  The alleged decline could also be explained by the fact that Defendants have opened a business that competes with MedQuest.  But Defendants' good-faith competition with MedQuest does not support a claim for misappropriation of a trade secret.  In short, a decline in MedQuest's business is not inherently suspicious and does not raise an inference of wrongdoing by Defendants.

Accordingly, the Amended Complaint does not adequately allege misappropriation of a trade secret nor improper use of a trade secret.

### 4.     **Plaintiff's Authority**

The cases Plaintiff cites do not demonstrate that it has adequately pled that (1) the lawyer list and the expert database are trade secrets; (2) that it took "reasonable measures" to protect the confidentiality of the lawyer list and the expert database; or (3) that Defendants misappropriated Plaintiff's alleged trade secrets.

In DFO Glob. Performance Com. Ltd. (Nevada) v. Nirmel, No. 20-CV-6093 (JPO), 2021 WL 3475596 (S.D.N.Y. Aug. 6, 2021) (see Pltf. Opp. (Dkt. No. 43) at 2-3), plaintiffs alleged that the defendants "disclosed the products in Plaintiffs' pipeline, Plaintiffs' vendor information, and the sales volume and profitability of Plaintiffs' offerings, including [particular] products." Id. at *4.  Unlike the information in MedQuest's expert database and

lawyer list, however, the information at issue in DFO Global was not readily ascertainable, and the allegations of misappropriation in DFO Global are far more detailed than those here. See id. at *5.

Town & Country House & Home Serv. v. Newbery, 3 N.Y.2d 554 (1958) (see Pltf. Opp. (Dkt. No. 43) at 5-6), involves the sale of housekeeping services. Plaintiff had compiled a customer list by cold-calling all of the homes in a particular neighborhood. Id. at 559. Town & Country is not persuasive here, because the lawyers and expert witnesses found in Plaintiff's lawyer list and expert database – unlike the homeowner customers in Town & Country – are readily ascertainable.

Churchill Commc'ns Corp. v. Demyanovich, 668 F. Supp. 207 (S.D.N.Y. 1987) (see Pltf. Opp. (Dkt. No. 43) at 6-8), involves an electronic messaging service. Plaintiff argued that "the fact that a company . . . has already been 'sold' on the idea of electronic mail" is a protectible trade secret. The court disagreed, finding that the fact that a company "openly engaged in business" is "an electronic mail user" is not a protectible trade secret. Id. at 212. While Churchill Communications goes on to hold that "the contact person within a given company, as well as the product, pricing and volume information about that company, constitute[s] confidential information," id., MedQuest does not allege that Defendants misappropriated this type of information.

Chefs Diet Acquisition Corp. v. Lean Chefs, LLC, No. 14-CV-8467 (JMF), 2016 WL 5416498 (S.D.N.Y. Sept. 28, 2016) (see Pltf. Opp. (Dkt. No. 43) at 8-9), involves a list of non-public retail customers. That court in that case also found that plaintiff had taken reasonable measures to protect the confidentiality of its information, including video and biometric security. There was also clear evidence of misappropriation. Id. at *5–6.

14

In Panther Sys. II, Ltd. v. Panther Computer Sys., Inc., 783 F. Supp. 53 (E.D.N.Y. 1991) (see Pltf. Opp. (Dkt. No. 43) at 18-20), the court denied a motion for a preliminary injunction to the extent that plaintiff sought to prevent defendants from soliciting business from its "public entity" customers. The court granted injunctive relief only with respect to customers whose identities were not readily ascertainable by those in the trade. Id. at 67-70 ("Generally, names of customers ascertainable through public sources will not be protected as trade secrets.").

In sum, the case law cited by Plaintiff does not demonstrate that Plaintiff has adequately pled that (1) the lawyer list and the expert database are trade secrets; (2) that it took "reasonable measures" to protect the confidentiality of the lawyer list and the expert database; or (3) that Defendants misappropriated Plaintiff's alleged trade secrets.

For the reasons stated above, Defendants' motion to dismiss Plaintiff's DTSA claim will be granted.

## III.     STATE LAW CLAIMS

The Amended Complaint pleads state law claims for breach of fiduciary duty and unfair competition (see Am. Cmplt. (Dkt. No. 12) ¶¶ 26-41), and asserts that subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1367, based on Plaintiff's DTSA claim. (See Id. ¶ 2)  As discussed above, Plaintiff's DTSA claim will be dismissed.

"'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.'" Sefovic v. Mem'l Sloan Kettering Cancer Ctr., 2017 WL 3668845, at *8 (S.D.N.Y. Aug. 23, 2017) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).  There is no reason to vary from this rule here.  Accordingly, this Court will not exercise supplemental jurisdiction over Plaintiff's state law claims.

### IV.      PLAINTIFF'S MOTION FOR LEAVE TO AMEND

Although this Court explained in detail the defects in the Amended Complaint at the November 23, 2021 conference, and authorized Plaintiff to file a second amended complaint by December 3, 2021 (Nov. 23, 2021 Tr. (Dkt. No. 33) at 2-5, 8), Plaintiff chose not to file a second amended complaint.  Instead, in its opposition to Defendants' motion to dismiss, Plaintiff requests leave to amend.  (Dkt. No. 43 at 21-22)  The motion for leave to amend will be denied without prejudice.  In any subsequent motion for leave to amend, Plaintiff will explain in detail how each defect cited in this Order has been satisfied by factual allegations in the proposed second amended complaint, which will be attached as an exhibit to the motion.  Plaintiff is cautioned that vague, speculative, and conclusory allegations in the proposed second amended complaint will be ignored.  To the extent that new facts are pled in the proposed second amended complaint, Plaintiff will explain why these facts were not pled in the Complaint and Amended Complaint.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (Dkt. No. 39) is granted, and Plaintiff's motion for leave to amend (Dkt. No. 43) is denied without prejudice. The Clerk of Court is directed to terminate the motions (Dkt. Nos. 39, 43). Any motion for leave to amend is to be filed by March 31, 2023. The proposed second amended complaint is to be attached as an exhibit to the motion, along with a redline to the amended complaint filed at Dkt. No. 12. Any opposition to the motion for leave to amend is to be filed by April 14, 2023.

Dated: New York, New York
       March 19, 2023

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge